# Exhibit A



June 26, 2001

Fausto Capote

3100 Cumberland Blvd.
Suite 200
Atlanta
Georgia 30339
USA

Telephone
+1 770 850 4500

http://www.sita.int

Dear Fausto,

We are pleased to extend to you an offer of employment with SITA Information Networking Computing USA, Inc. ("SITA INC") as a Product Support Analyst  (Grade 4A).  Your initial base salary will be at the annual rate of $45,000, payable in installments on the 15th and the last day of each month.

Your employment commencement date with SITA Inc. will be July 2, 2001.  However, SITA INC will recognize your RPA date of hire of 5/4/98 for purposes of future vacation accrual, education assistance, and participation and vesting under the SITA Employee 401(k) Savings Plan. Your medical/dental/vision benefits will take effect upon your employment commencement date. You will be eligible to enroll in the SITA Employee 401(k) Savings Plan as of your employment commencement date with SITA.  Your first contribution into the plan will be the payroll period immediately following your completion of the enrollment process with the record keeper T. Rowe Price. SITA will match 100% of your contributions up to the first 6% of your SITA INC compensation upon completion of six months of service (including your RPA service).

Your employment will be subject to the policies and procedures of SITA INC, including its at-will employment policy. At-will employment means that either you or the company will be free to terminate your employment at any time.  The company will require documentary evidence of your identity and eligibility for employment in the United States.  This may include your submission of tax and immigration related forms.   On July 2nd, 2001 all remaining employment and benefit enrollment forms will be completed followed by an orientation session.

This offer of employment is contingent on the closing of an acquisition agreement between Mercury Air Group Inc. and SITA INC.  Should the closing of the acquisition not occur this offer is withdrawn.  It is understood that your acceptance is similarly contingent on the closing of the acquisition.

Please indicate your acceptance of this offer by signing below and returning it to my attention by close of business on Friday June 29, 2001.  We are extremely pleased that you will be joining SITA INC.  If there is anything further we can do to assist you, please do not hesitate to call Pamela White at 770-303-3449.

Regards,

Robert Bender
Director, Human Resources AAS

Read & Approved

_____
Signature

06/27/2001
_____
Date

Exhibit B



3100 Cumberland Blvd.
Suite 200
Atlanta
Georgia 30339
USA

June 26, 2001

Hugo Cordova

Telephone
+1 770 850 4500

http://www.sita.int

Dear Hugo

We are pleased to extend to you an offer of employment with SITA Information Networking Computing USA, Inc. ("SITA INC") as a Project Manager (Grade 6 ).   Your initial base salary will be at the annual rate of $63,000, payable in installments on the 15th and the last day of each month.

You will be eligible to participate in the SITA Incentive Reward Program ("SIRP") which provides for the payment of an incentive reward, based on the achievement of Company Overall Business Objectives, Specific Business Objectives and Individual Program Objectives.  For 2001, your on-target SIRP reward is set at 8% of your annualized initial base salary and your maximum SIRP reward for 2001 may not exceed 12% of your annualized initial base salary. Any incentive reward for 2001 will be pro-rated to the number of months you are employed by SITA INC during 2001 and will, subject to the terms and conditions of the SIRP program document, typically be paid during the month of April.

Your employment commencement date with SITA Inc. will be July 2, 2001.  However, SITA INC will recognize your RPA date of hire of 2/9/98 for purposes of future vacation accrual, education assistance, and participation and vesting under the SITA Employee 401(k) Savings Plan. Your medical/dental/vision benefits will take effect upon your employment commencement date. You will be eligible to enroll in the SITA Employee 401(k) Savings Plan as of your employment commencement date with SITA.  Your first contribution into the plan will be the payroll period immediately following your completion of the enrollment process with the record keeper T. Rowe Price. SITA will match 100% of your contributions up to the first 6% of your SITA INC compensation upon completion of six months of service (including your RPA service).

Your employment will be subject to the policies and procedures of SITA INC, including its at-will employment policy. At-will employment means that either you or the company will be free to terminate your employment at any time.  The company will require documentary evidence of your identity and eligibility for employment in the United States.  This may include your submission of tax and immigration related forms.   On July 2nd, 2001 all remaining employment and benefit enrollment forms will be completed followed by an orientation session.



This offer of employment is contingent on the closing of an acquisition agreement between Mercury Air Group Inc. and SITA INC.  Should the closing of the acquisition not occur this offer is withdrawn.  It is understood that your acceptance is similarly contingent on the closing of the acquisition.

Please indicate your acceptance of this offer by signing below and returning it to my attention by close of business on Friday June 29, 2001.  We are extremely pleased that you will be joining SITA INC.  If there is anything further we can do to assist you, please do not hesitate to call Pamela White at 770-303-3449.

Regards,

Robert Bender
Director, Human Resources AAS

Read & Approved

_____
Signature

6/29/01
_____
Date

Hugo Cordova
Page 2

Exhibit C

## AGREEMENT AND GENERAL RELEASE

Societe Internationale de Telecommmunications Aeronautiques, S.C. ("SITA SC") and SITA INC USA, Inc., its parent, affiliates, subsidiaries, divisions, successors and assigns and the employees, officers, directors and agents thereof (collectively referred to throughout this Agreement as the ("COMPANY"), and **Fausto A. Capote** ("EMPLOYEE"), intending to bind himself, his heirs, executors, administrators, successors and assigns, mutually desire to enter into this Agreement and General Release and agree that:

The terms of this Agreement and General Release are the products of mutual negotiation and compromise between EMPLOYEE and the COMPANY; and

The meaning, effect and terms of this Agreement and General Release are fully understood by EMPLOYEE; and

EMPLOYEE has been advised by the COMPANY that he should consult with an attorney prior to executing this Agreement and General Release; and

EMPLOYEE has carefully considered other alternatives to executing this Agreement and General Release.

THEREFORE, EMPLOYEE and the COMPANY, for the full and sufficient consideration set forth below, agree as follows:

1. EMPLOYEE's last date of employment is **June 28, 2013**.

2. EMPLOYEE acknowledges that if he does not execute this Agreement, he will be entitled to receive eight (8) weeks of salary continuation. EMPLOYEE further acknowledges that if he does not execute this Agreement, he would be paid any outstanding monies owed to him related to management approved expense reports and his accrued unused vacation balance as of June 28, 2013.

3. This Agreement and General Release supersedes all prior agreements, whether written or oral between EMPLOYEE and the COMPANY. All prior agreements between EMPLOYEE and COMPANY are effectively null and void, except to the extent that any provision expressly survives the Employment Agreements.

4. In consideration for the execution by EMPLOYEE of this Agreement and General Release and compliance with the promises made herein, the COMPANY agrees:

a.  To pay EMPLOYEE additional salary continuation, for thirty-seven (37) weeks, payable over the course of the regularly scheduled pay dates beginning the first payroll date following the execution of this agreement, subject to applicable taxes, withholdings and deductions.

b.  To provide EMPLOYEE with a neutral reference. Upon written inquiry, prospective employers will be advised only as to the dates of EMPLOYEE's employment, his recent job title and last salary provided that EMPLOYEE has provided a written release for the same. The COMPANY will provide EMPLOYEE with a letter for the purpose of employment and compensation verification at his request.

c.  The COMPANY agrees to continue EMPLOYEE's health plan coverage so long as he is receiving salary continuation at the same cost EMPLOYEE had paid as an active employee, subject to applicable taxes, withholdings and deductions.

d.  To provide outplacement assistance for three (3) months through a third-party vendor of the company's choosing.

e.  To pay EMPLOYEE a pro-rated 2013 SIRP payment of $3,977 (Three thousand nine hundred and seventy-seven dollars) subject to applicable taxes, withholdings and deductions by August 31, 2013.

EMPLOYEE acknowledges and agrees that EMPLOYEE would not receive the payments specified in this Paragraph, except for EMPLOYEE'S execution of this Agreement, and the fulfillment of the promises contained herein, and that such consideration is greater than any amount to which EMPLOYEE would otherwise be entitled. EMPLOYEE further acknowledges and agrees that EMPLOYEE has received payment in full for all of the compensation, wages, benefits and/or payments of any kind otherwise due from the COMPANY, including, but not limited to compensation, bonuses, commissions, lost wages, expense reimbursements, payments to benefit plans, unused, accrued vacation, leave, and personal time, severance, sick pay or any other payment or benefit under a COMPANY plan, program, policy, practice or promise. The payments described in this Paragraph are expressly contingent upon the EMPLOYEE'S full compliance with the terms of this Agreement. Should EMPLOYEE fail to fully comply with the terms of this Agreement, EMPLOYEE shall forfeit rights to any of the payments described in this Paragraph, and EMPLOYEE shall immediately return to COMPANY any payments already made pursuant to this Paragraph.

5. EMPLOYEE understands and agrees that he would not receive the monies and/or benefits specified in Paragraph 4 above, except for his execution of this Agreement and General Release, and the fulfillment of the promises contained herein, and that such consideration is greater than any amount to which he would otherwise be entitled.

6. <u>RELEASE</u>. EMPLOYEE, of his own free will knowingly and voluntarily releases and forever discharges the COMPANY of and from any and all actions or causes of action, suits, claims, charges, complaints, promises and contracts (whether oral or written, express or implied from any source), whatsoever, in law or equity, which EMPLOYEE may now have against the COMPANY, including all unknown, undisclosed and unanticipated losses, wrongs, injuries, debts, claims or damages to EMPLOYEE, for, upon, or by reason of any matter, cause or thing whatsoever including, but not limited to, any and all matters arising out of his employment by the COMPANY and the cessation of said employment, and including, but not limited to, any claims for salary, bonuses, severance pay, or vacation pay, any alleged violation of the National Labor Relations Act, any claims for discrimination of any kind under Title VII of the Civil Rights Act of 1964, Sections 1981 through 1988 of Title 42 of the United States Code, the Employee Retirement Income Security Act of 1974 (except for vested benefits which are not affected by this agreement), the Americans With Disabilities Act of 1990, the Americans With Disabilities Amendments Act of 2008, the Age Discrimination in Employment Act of 1967 as amended by the Older Workers Benefit Protection Act, the Fair Labor Standards Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Federal Family and Medical Leave Act, the Lilly Ledbetter Fair Pay Act of 2009; and any other federal, state or local civil or human rights law, or any other alleged violation of any local, state or federal law, regulation or ordinance, and/or public policy, implied or expressed contract, fraud, negligence, estoppel, defamation, infliction of emotional distress or other tort or common-law claim having any bearing whatsoever on the terms and conditions and/or cessation of his employment with the COMPANY including, but not limited to, any allegations for costs, fees, or other expenses, including reasonable attorneys' fees, incurred in these matters, which he ever had, now has, or shall have as of the date of this Agreement and General Release.

7. Notification of Rights under the Older Workers Benefit Protection Act and Release of Claims under the Age Discrimination in Employment Act

I GIVE UP ANY AND ALL CLAIMS UNDER THE OLDER WORKSERS BENEFIT PROTECTION ACT AND THE AGE DISCRIMINATION IN  EMPLOYMENT ACT AND THOSE CLAIMS LISTED ABOVE KNOWINGLY AND VOLUNTARILY AND AFFIRM THAT:

     A.   I WAS GIVEN A COPY OF THIS AGREEMENT ON *June 28, 2013*

     B.   I WAS ADVISED IN WRITING TO DISCUSS THIS AGREEMENT AND RELEASE OF ALL CLAIMS AND ITS TERMS WITH AN ATTORNEY.

     C.   I WAS GIVEN A PERIOD OF AT LEAST FORTY-FIVE (45) FULL DAYS TO REVIEW AND CONSIDER THE AGREEMENT AND RELEASE OF ALL CLAIMS, INCLUDING THE NOTICE ATTACHED HERETO AS EXHIBIT "A." IN THE EVENT I EXECUTE THIS AGREEMENT BEFORE THAT TIME, I CERTIFY BY THAT EXECUTION THAT I KNOWINGLY AND VOLUNTARILY WAIVED THE RIGHT TO THE FULL 45-DAY CONSIDERATION PERIOD, FOR REASONS PERSONAL TO ME, WITH NO PRESSURE BY ANY COMPANY REPRESENTATIVE TO DO SO.

D.     I WAS TOLD I HAVE SEVEN (7) DAYS FOLLOWING MY SIGNING OF THE AGREEMENT AND RELEASE OF ALL CLAIMS TO CHANGE MY MIND AND TO REVOKE IT BY SUBMITTING A WRITTEN DOCUMENT BY CERTIFIED MAIL SIGNED BY ME TO THE COMPANY'S HUMAN RESOURCES REPRESENTATIVE: Keri Streicher. 3100 Cumberland Blvd, Suite 200. Atlanta, GA 30339, Phone: 770-303-3599

E.     I UNDERSTAND THAT THE AGREEMENT AND RELEASE OF ALL CLAIMS WILL NOT BE EFFECTIVE UNTIL THE SEVEN-DAY REVOCATION PERIOD HAS EXPIRED WITHOUT MY REVOKING OR CANCELING THE AGREEMENT.

F.     I UNDERSTAND AND AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT AND RELEASE OF ALL CLAIMS.

G.     I WAS NOT COERCED, THREATENED, OR OTHERWISE FORCED TO SIGN THIS AGREEMENT. I AM VOLUNTARILY SIGNING AND DELIVERING THIS AGREEMENT OF MY OWN FREE WILL.

H.     I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP RIGHTS I MAY HAVE. I UNDERSTAND I DO NOT HAVE TO SIGN THIS AGREEMENT.

8.     NON-DISCLOSURE. In exchange for the consideration set forth in Paragraph 4 of this Agreement and General Release, for two (2) years after the termination of EMPLOYEE'S employment, EMPLOYEE will not, directly or indirectly, for any reason, for his own account, or on behalf of or together with any other person, disclose any Confidential Information of the COMPANY and its subsidiaries and affiliates.     Provided however, that if the Confidential Information is deemed a trade secret under Georgia law, then the period for nondisclosure shall continue for the applicable period under Georgia Trade Secret laws in effect at the time of EMPLOYEE'S termination. For purposes of this Agreement and General Release, "Confidential Information" shall mean any and all trade secrets, financial information and other information considered by the COMPANY as being confidential and concerning the business and affairs of the COMPANY, including but not limited to (a) product specifications, discoveries, improvements, processes, marketing and service methods or techniques, formulae, designs, styles, specifications, data bases, computer programs (whether in source code or object code), know-how, strategies, data, customer lists, current and anticipated customer requirements, price lists, market studies, business plans, and any other information, however documented, that is a trade secret of the COMPANY, or any of its affiliates within the meaning set forth in O.C.G.A. § 10-1-761; (b) information concerning the business and affairs of the COMPANY (which includes, but is not limited to, historical financial statements, financial projections and budgets, historical and projected sales, capital spending budgets and plans, business plans, the names and background of key personnel, personnel training and techniques and materials, and sales techniques and materials of the COMPANY), however documented; and (c) notes, analyses, compilations, studies, summaries, and other material prepared by or for the COMPANY containing or based, in

whole or in part, on any information included in the foregoing; provided, however, Confidential Information shall not include any information that EMPLOYEE demonstrates was or became generally known or available to the public other than as a result of an unauthorized or unlawful disclosure directly or indirectly by EMPLOYEE.

9.   NON-SOLICITATION AND NON-INTERFERENCE.   In exchange for the consideration set forth in Paragraph 4 of this Agreement and General Release, for one (1) year after the termination of EMPLOYEE's employment, EMPLOYEE will not, directly or indirectly, for any reason, for his own account, or on behalf of or together with any other person:

a.     solicit, induce, or conspire with, or attempt to solicit, induce, or conspire with, any of the officers or employees of the COMPANY or any of its affiliates (the COMPANY and its affiliates collectively being "the COMPANY" for purposes of this Section 9) with whom EMPLOYEE has dealt with or otherwise has or had direct dealings with during the twenty-four (24) month period prior to the termination of EMPLOYEE's Employment to terminate their employment or relationship with, or to compete against, the COMPANY;

b.     solicit or induce, cause, request, encourage or attempt to solicit or induce, directly or indirectly, any of the customers of the COMPANY, with whom EMPLOYEE has dealt with or otherwise has or had direct dealings with during the twelve (12) month period prior to the termination of EMPLOYEE's employment to change or discontinue, in whole or in part, its existing or business relationship with Employer and/or to become a customer or vendor of any other person or entity or communicate with any person or entity for such purpose, or authorize or approve the taking of such actions by any person or entity.

10.   EMPLOYEE waives his right to accept any relief or recovery from any charge or complaint before any federal, state, or local administrative agency against the COMPANY to the extent such charge was derived from acts occurring prior to the date this Agreement and General Release is executed, except as such waiver is prohibited by statutory provision.   EMPLOYEE further waives all rights to file any action before any federal, state, or local court against the COMPANY for any acts occurring prior to the date this Agreement and General Release is executed, except an action directly relating to the general release provisions of this Agreement and General Release. EMPLOYEE also agrees that he does not have any current charge against the COMPANY pending before any local, state or federal agency regarding his employment.

11.   EMPLOYEE agrees not only to release the COMPANY from any and all claims as stated herein which he could make on his own behalf, but also those which may be made by any other person or organization on his behalf.   EMPLOYEE specifically waives any right to become, and promises not to become a member of any class in a case in which a claim or claims against the COMPANY are made involving any events up to and including the date of this Agreement and General Release, except where such waiver is prohibited by statutory provision. Nothing in this Agreement is intended to limit in any way the right of the federal Equal Employment Opportunity Commission to investigate any charge of discrimination brought to its attention, including a charge filed by EMPLOYEE.

12.  EMPLOYEE agrees not to disclose, either directly or indirectly, any information whatsoever regarding the existence or substance of this Agreement and General Release including specifically any of the terms of consideration described herein.  This nondisclosure includes, but is not limited to, members of the media, present and former employees of the COMPANY, and other members of the public, but does not include an attorney or accountant with whom EMPLOYEE chooses to consult or seek advice regarding his consideration of and decision to execute this Agreement and General Release.  In response to inquiries from individuals other than an attorney or accountant, EMPLOYEE shall only respond "I have satisfactorily resolved all of my differences with the COMPANY."  In the event of disclosure, except (a) pursuant to lawful court order or subpoena, or (b) in a formal proceeding in which the terms of this Agreement and General Release are at issue, EMPLOYEE agrees to return all settlement monies paid to EMPLOYEE as set forth in Paragraph 4 (a) through (e), plus the reimbursement of attorneys' fees and court costs.

13.  EMPLOYEE warrants, represents, covenants, and agrees that as of the date he executes this Agreement, he has returned to the COMPANY all COMPANY documents, records, property, and information in any form, including, but not limited to, COMPANY files, electronic messages, notes, drawings, records, business plans and forecasts, financial information, specifications, vendor information, business planning or strategy information, information about COMPANY employees, customer identity information, tangible property (including, but not limited to, computers), intellectual property, credit cards, identification badges, parking badges, and keys; and any materials of any kind which contain or embody trade secrets and other confidential information of the COMPANY (and all embodiments, copies, or extracts thereof), which EMPLOYEE has acquired or possessed during EMPLOYEE'S employment. EMPLOYEE also warrants, represents, covenants, and agrees that he has not made or retained and shall not make or retain any embodiment, copy, or extract thereof.

14.  This Agreement and General Release shall be interpreted under the laws of the State of Georgia.  Its language shall be construed as a whole, according to its fair meaning, and not strictly for or against either party.  Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this in full force and effect.

15.  EMPLOYEE agrees that neither this Agreement and General Release nor the furnishing of the consideration for this Release shall be deemed or construed at any time for any purpose as an admission by the COMPANY of any liability or unlawful conduct of any kind.

16.  Notwithstanding any other provision contained in this Agreement and General Release, if EMPLOYEE at any time becomes employed by the COMPANY, the obligation to pay salary continuation, and the obligation to provide continued health care coverage, shall both cease immediately upon commencement of such employment, and the rest of this Agreement and General Release shall remain in effect.

17.    Employee agrees to cooperate with SITA in any pending or future litigation or investigation to which employee may be a witness or called to testify.

18.  This Agreement and General Release may not be modified, altered or changed except upon express written consent of both parties wherein specific reference is made to this Agreement and General Release.

19.  This Release sets forth the entire agreement between the parties hereto, and fully supersedes any prior agreements or understandings between the parties.

THE PARTIES HAVE READ AND FULLY CONSIDERED THIS AGREEMENT AND GENERAL RELEASE AND ARE MUTUALLY DESIROUS OF ENTERING INTO SUCH AGREEMENT AND GENERAL RELEASE. EMPLOYEE UNDERSTANDS THAT THIS DOCUMENT SETTLES, BARS AND WAIVES ANY AND ALL CLAIMS HE HAD OR MIGHT HAVE AGAINST THE COMPANY THAT OCCURRED PRIOR TO THE EXECUTION OF THIS AGREEMENT AND GENERAL RELEASE; AND HE ACKNOWLEDGES THAT HE IS NOT RELYING ON ANY OTHER REPRESENTATIONS, WRITTEN OR ORAL, NOT SET FORTH IN THIS DOCUMENT.  HAVING ELECTED TO EXECUTE THIS AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SUMS AND BENEFITS SET FORTH ABOVE, EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE.

THEREFORE, the parties to this Agreement and General Release now voluntarily and knowingly execute this Agreement.

_____
EMPLOYEE

SITA

By: _____

Name: Keri Streicher

Title: Director, Human Resources

Signed and sworn before me
this 15" day of July 2013.

_____
NOTARY PUBLIC

NAHOLA MILLS
Notary Public - State of Florida
My Comm. Expires May 9, 2016
Commission # EE 197164

Signed and sworn before me
this 4 day of July 2013.

_____
NOTARY PUBLIC

ISABEL WOODALL
MY COMMISSION EXPIRES
AUG
24
2014
COBB COUNTY, GEORGIA
NOTARY PUBLIC

EXHIBIT "A"

ADEA NOTICE

1.      Employees being offered compensation in return for releases in the form of the Agreement are:

Exempt Salaried Employees who have been involuntarily and permanently laid off from employment due to a Reduction in Force, instituted by SITA due solely to Permanent job elimination.

2.      All eligible employees who terminate their employment with SITA pursuant to the terms of this Agreement must timely execute and return the Agreement to receive severance benefits. As provided in the Agreement, you may take forty-five (45) calendar days from the date you are provided the Agreement, to sign such Agreement in order to receive severance benefits. From the date you sign the Agreement, you will have seven (7) additional calendar days during which you may revoke your election. The Agreement should not be signed prior to your Employer Determined Last Day of Work.

3.      The following is a list of the job titles and corresponding ages of each employee who was selected for layoff and offered benefits in exchange for signing an Agreement:

Associate Developer: 56
Developer: 51, 53, 64
Expert CAS: 42
Expert S&IO: 62
Manager CAS: 46
Manager Software Development: 46
Sales Specialist Mgr Prod/Sol: 57
Senior Analyst CAS: 45, 56, 67
Senior Developer: 43, 64, 66

4.      The following is a list of the job titles and corresponding ages of employees in the same decisional unit as the employees listed in Paragraph 3, above, who were not selected for layoff and not offered benefits in exchange for signing an Agreement:

Senior Analyst CAS: 53

IN FURTHERANCE OF YOU MAKING AN INFORMED DECISION, SITA ADVISES YOU TO SEEK ADVICE FROM AN ATTORNEY OF YOUR CHOOSING TO ASSIST YOU IN FULLY UNDERSTANDING YOUR RIGHTS AND BENEFITS UNDER THE AGREEMENT AND RELEASE OF ALL CLAIMS YOU WILL BE REQUIRED TO SIGN IN ORDER TO RECEIVE SEVERANCE BENEFITS.

Accepted and Agreed to on this 15 day of July, 2013.

_____          _____
Employee                                        SITA

07/15/2013                               7/18/2013
_____          _____
Date                                             Date

# Exhibit D

1/28/2014                              whois.melbourneit.com/index.php3



MY ACCOUNT   DOMAIN NAMES   PRODUCTS   PROGRAMS   HELP   CORPORATE

Home » Whois » Domain Owner Check

Whois

**Domain Owner Check**

To view current registration and
ownership details please enter the
domain name in the inspection box,
select the correct extension and click
on the Whois button.

| Domain name | Extension | Encoding | |
|---|---|---|---|
| kronospra | .com ▼ | ▼ | Whois |

**This Domain Name is protected by** *My Private Registration*

All mail correspondence should be sent to the attention of the domain name. Only postal mail that requires proof of receipt and is traceable will be accepted. This may include certified mail, express mail or courier mail

Whois Result For kronospra.com @ whois.melbourneit.com.au

Domain Name: kronospra.com
Registry Domain ID: 1772984430_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.melbourneit.com
Registrar URL: http://www.melbourneit.com.au
Updated Date: 2014-01-13T19:01:05Z
Creation Date: 2013-01-12T20:48:13Z
Registrar Registration Expiration Date: 2015-01-12T20:48:13Z
Registrar: Melbourne IT Ltd
Registrar IANA ID: 13
Registrar Abuse Contact Email: abuse@melbourneit.com.au
Registrar Abuse Contact Phone: +61.386242300
Domain Status: clientTransferProhibited
Registry Registrant ID:
Registrant Name: Hugo Cordova
Registrant Organization: kronospra
Registrant Street: PO Box 61359
Registrant City: Sunnyvale
Registrant State/Province: CA
Registrant Postal Code: 94088
Registrant Country: US
Registrant Phone: +1.5105952002
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: contact@myprivateregistration.com
Registry Admin ID:
Admin Name: Admin PrivateRegContact
Admin Organization: kronospra
Admin Street: PO Box 61359 registered post accepted only
Admin City: Sunnyvale
Admin State/Province: CA
Admin Postal Code: 94088
Admin Country: US
Admin Phone: +1.5105952002
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: contact@myprivateregistration.com
Registry Tech ID:
Tech Name: TECH PrivateRegContact
Tech Organization: Yahoo! Inc
Tech Street: PO Box 61359 registered post accepted only
Tech City: Sunnyvale
Tech State/Province: CA
Tech Postal Code: 94088
Tech Country: US

Tech Phone: +1.5105952002
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: contact@myprivateregistration.com
Name Server: YNS1.YAHOO.COM
Name Server: YNS2.YAHOO.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net
>>> Last update of WHOIS database: 2014-01-28T21:22:45Z

## TERMS OF USE OF MELBOURNE IT WHOIS DATABASE

The WHOIS database is operated by Melbourne IT Ltd ('we', 'our' or 'us'). Your access to, and use of, our WHOIS database and the information made available on our WHOIS database is subject to these Terms of Use and our Privacy Policy. All information contained in our WHOIS database is provided 'as is'. We take no responsibility for any error or omission in our WHOIS database. The data in our WHOIS database is provided to you for your information only. You may use the information in our WHOIS database only for the purpose of obtaining information about or related to a domain name registration record ('Permitted Purpose'). You agree not to use high-volume, automated electronic processes to access or query our WHOIS database. By submitting a WHOIS query to us, you agree that you will only use the data obtained from a WHOIS query for the Permitted Purpose and for lawful purposes, and that you will not: (a) allow, enable, or otherwise support the transmission of mass, unsolicited, commercial advertising or solicitations by e-mail, telephone, or facsimile; or (b) enable high volume, automated, electronic processes that send queries or data to the systems of any Registry Operator or ICANN-Accredited registrar, except as reasonably necessary to register domain names or modify existing domain name registrations. You also agree that the copying, reproduction, translation, compilation, re-packaging, dissemination or other use of the data in our WHOIS database is prohibited without our prior written consent. We reserve the right to terminate your access to our WHOIS database at any time, and for any reason, including (without limitation) if you fail to comply with any provision of these Terms of Use, or we consider that you are excessively querying our WHOIS database. These Terms of Use may be modified by us at any time without notice by our amending the Terms of Use on this web page. You agree that your use of our WHOIS database following any modification to these Terms of Use will constitute your acceptance of these Terms of Use (as modified from time to time).

Domain Names Registration | Contact us | Site Map | Site Feedback | Policies | Privacy Policy

© 2004 Melbourne IT Ltd 
Melbourne IT Direct | Melbourne IT Corporate | Online Business Guide

# Exhibit E

# Electronic Articles of Incorporation
# For

P13000006215
FILED
January 17, 2013
Sec. Of State
jshivers

KRONOS SOFTWARE SOLUTIONS INC

The undersigned incorporator, for the purpose of forming a Florida
profit corporation, hereby adopts the following Articles of Incorporation:

## Article I

The name of the corporation is:
KRONOS SOFTWARE SOLUTIONS INC

## Article II

The principal place of business address:
7843 NW 111 CT
DORAL, FL.   33178

The mailing address of the corporation is:
7843 NW 111 CT
DORAL, FL.   33178

## Article III

The purpose for which this corporation is organized is:
ANY AND ALL LAWFUL BUSINESS.

## Article IV

The number of shares the corporation is authorized to issue is:
100

## Article V

The name and Florida street address of the registered agent is:
SUDHIR  KUMAR
7843 NW 111 CT
DORAL, FL.   33178

I certify that I am familiar with and accept the responsibilities of
registered agent.

Registered Agent Signature:  SUDHIR KUMAR

P13000006215
FILED
January 17, 2013
Sec. Of State
jshivers

## Article VI

The name and address of the incorporator is:

SUDHIR KUMAR
7843 NW 111 CT

DORAL FL 33178

Electronic Signature of Incorporator:   SUDHIR KUMAR

I am the incorporator submitting these Articles of Incorporation and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.  I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of this corporation and every year thereafter to maintain "active" status.

## Article VII

The initial officer(s) and/or director(s) of the corporation is/are:

Title:  P
SUDHIR  KUMAR
7843 NW 111 CT
DORAL, FL.  33178

## Article VIII

The effective date for this corporation shall be:

01/15/2013

# Exhibit F

# PI3OOOOO6215

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP   ☐ WAIT   ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____   Certificates of Status _____

┌─────────────────────────────────────┐
│ Special Instructions to Filing Officer: │
│                                         │
│                                         │
│                                         │
│                                         │
└─────────────────────────────────────┘

Office Use Only



600249470656

07/15/13--01017--027  **35.00

13 JUL 15 PM 2: 20

FILED
SECRETARY OF STATE
DIVISION OF CORPORATIONS

'JUL 1 7 2013

T. BROWN

# COVER LETTER

**TO:**   Amendment Section
      Division of Corporations

**SUBJECT:** KRONOS SOFTWARE SOLUTIONS INC

_Name of Corporation_

**DOCUMENT NUMBER:** P13000006215

The enclosed Statement of Change of Registered Office/Agent and fee are submitted for filing.

Please return all correspondence concerning this matter to the following:

### HUGO CORDOVA
_Name of Contact Person_

### KRONOS SOFTWARE SOLUTIONS INC
_Firm/Company_

### 7843 NW 111 CT
_Address_

### DORAL, FL 33178
_City/State and Zip Code_

### CSR027@YAHOO.COM
_E-mail address: (to be used for future annual report notification)_

For further information concerning this matter, please call:

_____ at (_____)_____
_Name of Contact Person_         _Area Code & Daytime Telephone Number_

Enclosed is a $35.00 check made payable to the Department of State.

| **Mailing Address:** | **Street Address:** |
|---|---|
| Amendment Section | Amendment Section |
| Division of Corporations | Division of Corporations |
| P.O. Box 6327 | Clifton Building |
| Tallahassee, FL 32314 | 2661 Executive Center Circle |
|  | Tallahassee, FL 32301 |

CR2E045 (03/12)

## STATEMENT OF CHANGE OF REGISTERED OFFICE OR REGISTERED AGENT OR BOTH FOR CORPORATIONS

*Pursuant to the provisions of sections 607.0502, 617.0502, 607.1508, or 617.1508, Florida Statutes, this statement of change is submitted for a corporation organized under the laws of the State of* FLORIDA *in order to change its registered office or registered agent, or both, in the State of Florida.*

1. The name of the corporation: KRONOS SOFTWARE SOLUTIONS INC

2. The principal office address: 7843 NW 111 CT  DORAL, FL 33178

3. The mailing address (if different): _____

4. Date of incorporation/qualification: 01/15/13        Document number: P13000006215

5. The name and street address of the current registered agent and registered office on file with the Florida Department of State: (If resigned, enter resigned)

   KUMAR, SUDHIR

   7843 NW 111 CT

   DORAL, FL 33178

6. The name and street address of the new registered agent (if changed) and /or registered office (if changed):

   FAUST ALFREDO CAPOTE

   16116 SW 149TH TERR
   <sub>P.O. Box NOT acceptable</sub>

   MIAMI FL 33196

The street address of its registered office and the street address of the business office of its registered agent, as changed will be identical.

Such change was authorized by resolution duly adopted by its board of directors or by an officer so authorized by the board, or the corporation has been notified in writing of the change.

_____          KUMAR, SUDHIR
Signature of an officer or director                 Printed or typed name and title

*I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I am familiar with and accept the obligation of my position as registered agent. Or, if this document is being filed merely to reflect a change in the registered office address, I hereby confirm that the corporation has been notified in writing of this change.*

_____          07/01/13
Signature of Registered Agent                         Date

If signing on behalf of an entity:

_____
Typed or Printed Name

### * * * FILING FEE: $35.00 * * *

MAKE CHECKS PAYABLE TO FLORIDA DEPARTMENT OF STATE
MAIL TO: DIVISION OF CORPORATIONS, P.O. BOX 6327, TALLAHASSEE, FL 32314

CR2E045 (03/12)

FILED
SECRETARY OF STATE
DIVISION OF CORPORATIONS
13 JUL 15 PM 2: 20

Exhibit G

----- Forwarded by Andy Smith/London/SITA/WW on 24/01/2014 11:27 -----

From: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬
To: Andy Smith <Andy.Smith@Sita.aero>,
Date: 24/01/2014 11:20
Subject: FW: Contract signature

Hi Andy,

Re the below from Pete in Procurement, please could you advise where we
are with the letter?

One further thought - I recall that ▬▬▬▬ has a clause in the contract
giving us the rights to the source code for RPA.  What will now happen
to that agreement given the transfer of support over to Kronos?

Kind regards,

Head of IT Services

4

Subject: FW: Contract signature

Hi

In an update to the Kronos situation see the below exchange.

I have also attached an email where I had confirmed to Andy S that we
would require the SITA contract ceases from 1st Jan. He had verbally
confirmed this was fine and said that SITA would raise a letter of
termination.

On further contact from Kronos, how should I play it?

Thx
Pete

From: Hugo Cordova [mailto:hccordov@gmail.com]
Sent: 09 January 2014 21:30
To: Fausto Capote
Cc: ▄▄▄▄▄▄▄▄▄▄▄▄▄
Subject: Re: Contract signature

Peter,
To further clarify Fausto's response. We could not take the risk of not
having George under SITA to continue supporting ▄▄▄. PRA operation
while the contract ▄▄ -Kronos was not signed (▄▄ s PRA operation would
have been left with no support) As soon as we receive such contract
signed, then, George will migrate permanently under Kronos.

In my case, I will remain with SITA a bit longer to coordinate any
pending items from the▄▄▄ migration and finalize other customers'
migrations; however, Fausto will be coordinating all support with
George under Kronos. We have made available additional resources as
well in case it is necessary.
As Fausto states it is very important that SITA gets notified of the
termination of PRA Support and the consequent stopping of billing.

Best Regards.
Hugo Cordova


On Thu, Jan 9, 2014 at 4:15 PM, Fausto Capote
<capote_fausto@yahoo.com<mailto:capote_fausto@yahoo.com>> wrote:

Hi Peter,
We are a bit concerned because we understood that the contract had been
signed already, and that there were remaining minor final touches. Do
you estimate that the review by the CFO and IT Director will be
accomplished soon?. Kronos has been making exclusive arrangements for
insurance, access, connectivity, billing, personnel since the beginning
of December 2013, and everything was put in place for the effective
date of January 1st. 2014.

As of January 1st. 2014, Kronos personnel has been supporting
PRA directly from ▄▄▄ servers, ▄▄▄▄▄ , ▄▄▄▄▄. All work has
stopped on SITA's side.
George Karakunnel is expected to be formally discharged by SITA in the
next few days/weeks. Has ▄▄▄ formally notified SITA to stop PRA support
as of January 1st.  2014?
Hugo will remain with SITA a few more weeks to take care of any loose
ends on the ▄▄▄ migration.
In practical terms ▄▄▄▄ is receiving PRA dedicated support from

5

Kronos as of January 1st.2014. It is Kronos' understanding that billing has begun as of this date. Has ▬▬▬▬ notified SITA to stop PRA billing?

Best Regards
Fausto


---------- Forwarded message ----------
From: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
Date: Thu, Jan 9, 2014 at 4:59 AM
Subject: RE: Contract signature
To: Kronos <fcapote@kronospra.com<mailto:fcapote@kronospra.com>>
Cc: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬


Cordova <hccordov@gmail.com<mailto:hccordov@gmail.com>>

Hi Fausto

This is currently under review with our IT Director and CFO. Will update you soon.

Would you be able to provide some further clarity with regard to the transition of the Key Personnel to Kronos employment from SITA? Are these individuals now on board at Kronos?

Many thanks
Pete

From: Kronos [mailto:fcapote@kronospra.com<mailto:fcapote@kronospra.com>]
Sent: 09 January 2014 01:46
To: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
Cc: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Hugo Cordova
Subject: Contract signature

Hi Peter, hope you are doing well.  Just checking to see if you have had a chance to get all the necessary signatures for the finalization of the contract.

Thanks
Fausto Capote
Regional Director
----------------------------
Kronos Software Solutions Inc.
16116 SW 149 Terrace
Miami, Florida 33196
Tel: +1-786-442-9837<tel:%2B1-786-442-9837>

----------------------------------------

6

Exhibit H

**SITA**

JANUARY 23, 2014

3100 Cumberland Blvd.
Suite 200
Atlanta, GA
30339
USA

Phone:
+1 (770) 850-4500
Fax:
+1 (770) 303-3644

www.sita.aero

Mr. Fausto Capote
16116 SW 149 Terrace
Miami, Florida 33196

Re:     Agreement and General Release dated July 15, 2013

Dear Fausto,

I hope this letter finds you well as you settle in to your new role as Regional Director with KSS. In connection with your June 28, 2013 termination of employment from SITA as Project Manager/Expert CAS, this letter will serve as a reminder of your post-employment obligations to SITA referenced in the Agreement and General Release executed on July 15, 2013.

As you know, during your employment with SITA, you had access to SITA's confidential and proprietary information including, without limitation, its financial information, research and development, technological strategies, prototypes, network configurations and diagrams, business methods, expansion plans, product development, marketing, supplier and pricing information, internal corporate planning, systems and operations, procedures, Customers, policies, employee issues and maintenance costings. We consider this information to be SITA's trade secrets. SITA's trade secrets are highly valuable to SITA and SITA would be irreparably harmed if this information was known to its competitors or to the public. The Georgia Trade Secrets Act prohibits misappropriation of trade secrets, and as a former SITA employee, you are under a continuing duty to not disclose, use, or misappropriate SITA's trade secrets. As a part of this duty, you may not solicit information regarding SITA's trade secrets from other SITA employees. Furthermore, if you have any property belonging to SITA in your possession, please immediately return it directly to me.

In addition to your duty to protect SITA's trade secrets, it is still your duty as a former Project Manager/Expert CAS at SITA to refrain from soliciting SITA's employees and customers with whom you have had direct contact on behalf of your new employer, KSS, or on behalf of any other competitor of SITA. Georgia law prohibits interference with SITA's business relationships and contracts. SITA takes these issues very seriously and, therefore, expects and appreciates your anticipated compliance with your continuing obligations to SITA referenced in the Agreement and General Release executed on July 15, 2013.

Please feel free to contact me should you have any questions regarding your post-employment obligations to SITA. We wish you the best in your future endeavors.

Attached is a copy of the fully executed Agreement and General Release dated July 15, 2013.

Sincerely,

Keri Streicher
Director, Human Resources
SITA

CC: Annette A. Idalski
Attorney at Law
Chamberlain Hrdlicka